UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**MARAMAGELIS, R., on behalf of D.D.F.,**

                Plaintiff,                22-CV-246Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on July 29, 2013, alleging disability on behalf of her child, age 7, due to opposition defiant disorder ("ODD"), and attention deficit hyperactivity disorder ("ADHD"). Dkt.#4, p.56. On July 28, 2016, Administrative Law Judge ("ALJ"), William Weir determined that the child had (1) no limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in ability to care for himself; and (6) no limitation in health and physical well-being, and was not, therefore,

disabled. Dkt. #4, pp.32-41. By Stipulation entered April 5, 2018, the matter was remanded from this Court for further proceedings. 17-CV-1106 at Dkt. #7.

On March 16, 2020, ALJ Weir determined that the child had (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in ability to care for himself; and (6) no limitation in health and physical well-being, and was not, therefore, disabled. Dkt. #4, pp.429-436. On April 6, 2021, the Appeals Council determined that plaintiff had not received adequate notice to support the ALJ's determination that plaintiff had constructively waived her appearance and remanded the matter to another ALJ for a hearing. Dkt. #4, p.446.

On November 5, 2021, plaintiff and the child, represented by counsel, appeared by telephone conference call at an administrative hearing before ALJ Paul Georger. Dkt. #4, pp.313-345. The child testified that he was 16 years old and a sophomore at Lewis J. Bennett High School. Dkt. #4, pp.319-320. He was attending regular classes, receiving grades of 80% and higher. Dkt. #4, p.320. He agreed that his medication helps him concentrate and makes him a little more calm. Dkt. #4, p.321. He plays video games and basketball with friends from school and has no difficulty getting along with his teachers. Dkt. #4, pp.322-323. He was suspended twice in his freshman year for fighting. Dkt. #4, p.322. He recently began to suffer headaches that last 30 minutes to an hour approximately three times per week. Dkt. #4, pp.323-324.

Plaintiff testified that her child had been diagnosed with ADHD and ODD, for which he takes medication during the school year. Dkt. #4, pp.325-326. She testified that her child had not had any behavioral issues so far this year and that his grades were in the 80 and 90s, except for math, because he hadn't turned in some homework. Dkt. #4, pp.326-327. She described multiple behavioral issues in middle school, including instances of bullying and leaving the classroom without permission. Dkt. #4, pp.328 & 330. He bullies his brother at home and has been physically aggressive with her on three occasions. Dkt. #4, pp.329-330. He raises his voice to her "all the time" and will go into his room and hit the door. Dkt. #4, p.331. She believed that his behavior had improved at school because he was no longer in special education classes and had a girlfriend. Dkt. #4, p.332.

The ALJ rendered a decision that plaintiff was not disabled on November 30, 2021. Dkt. #4, pp.296-304. Plaintiff commenced this action seeking review of the Commissioner's final decision on September 10, 2020. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). So long as "substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion." *Keough o/b/o Jamt v. Comm'r of Soc. Sec'y*, 18-CV-1065, 2020 WL 4504988, at *3 (W.D.N.Y. Aug. 5, 2020), *quoting Cartagena v. Comm'r of Soc. Sec'y*, 18-CV-245, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 27, 2019).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of July 29, 2013; (2) the child's ADHD, ODD and headaches constitute severe impairments; and (3) the child's impairments did not meet or medically or functionally equal any listed impairment, and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.297-35. More specifically, the ALJ determined that the child exhibited: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others;

(4) no limitation in moving about and manipulating objects; (5) less than marked limitation in ability to care for himself; and (6) no limitation in health and physical well-being. Dkt. #4, p.299.

Plaintiff argues that the ALJ failed to provide a specific evaluation of the five domains for which he determined the child had a less than marked limitation, thereby rendering the ALJ's finding unreviewable. Dkt. #7-1, p.11. Plaintiff argues that this lack of explanation is particularly troubling given the opinion of the child's therapist that the child had marked limitations in interacting and relating with others, as well as caring for himself. Dkt. #7-1, p.13. Plaintiff also argues that the ALJ mischaracterized the therapist's opinion, calling into question his review of the record. Dkt. #7-1, p.13.

The Commissioner responds that the ALJ properly explained how substantial evidence supported his determination. Dkt. #8-1, pp.12-19.

When reviewing a child's impairments for functional equivalence, an ALJ must consider all of the relevant evidence and employ a "whole child" approach which considers the child's everyday activities and requires the ALJ to determine all domains involved in performing such activities, as well as whether the child's medically determinable impairments account for limitations in activities, and to what degree such impairments limit the child's ability to function age-appropriately in each domain. *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp.3d 287, 291-92 (W.D.N.Y. 2021). There is no particular structure required to demonstrate compliance with this approach.

*Elizabeth R. o/b/ J.D.R. v. Comm's of Soc. Sec.*, 21-CV–6037, 2023 WL 2325885, at *3 (W.D.N.Y. March 2, 2023) (dismissing plaintiff's argument that the ALJ failed to discuss the domains individually, give a definition of each domain and the age-appropriate expectations or give a summary of functioning in each domain and opining that "an ALJ's analysis does not need to be structured in such a rigid way."). Stating conclusions in a bullet-point format, for example, does not establish grounds for remand so long as the ALJ explains the conclusions by addressing the record in sufficient detail. *Tanya D. o/b/o L.J.B. v. Comm'r of Soc. Sec.*, 21-CV-6090, 2023 WL 4999833, at *3 (W.D.N.Y. Aug. 4, 2023). "All that is ultimately required of the ALJ's decision is sufficient analysis to permit meaningful judicial review of the ALJ's rationale in relation to the record evidence." *Martonique A. o/b/o M.Q. v. Cmm'r of Soc. Sec.*, 21-CV-849, 2023 WL 5723068, at *5 (W.D.N.Y. Sept. 5, 2023); *See Taneisha R. o/b/o N.D.P. v. Comm'r of Soc. Sec.*, 23-CV-98, 2024 WL 1151764, at *6 (W.D.N.Y. Mar. 18, 2024) (The ALJ is only required to build an accurate and logical bridge between the evidence and the decision to enable a court to engage in meaningful judicial review).

In the instant case, the ALJ's analysis is more than sufficient to enable meaningful review of his determination that the child's severe impairments did not cause marked limitations in any domain. The only evidence of marked limitations came from the child's therapist, Clare Malachowski, LMSW,[1] who completed a child mental

---

[1] Under the operative regulations on the date that the SSI application was filed, licensed clinical social workers are considered other sources who can provide evidence of the severity of the child's impairment and how it affects the child's ability to function, but because they are not considered acceptable medical sources, their opinions are not subject to the treating physician rule. *Drysdale v. Colvin*, 14-CV-1722, 2015 WL 3776382, at *4 (S.D.N.Y. June 16, 2015), *citing* SSR 06-03P, 2006 WL 2329939, at *2-3 (Aug. 9, 2006).

health questionnaire dated January 30, 2020. Dkt. #4, pp.1055-1060. LMSW Malachowski identified the following symptoms: decreased energy; impairment in impulse control; mood disturbance; difficulty thinking or concentrating; persistent disturbances of mood or affect; hyperactivity; and easy distractibility. Dkt. #4, p.1056. She opined that the child was markedly limited in the domains of interacting and relating with others[2] and caring for self,[3] explaining:

> [Child] has difficulties focusing and following directions. He often has difficulty respecting adults at school and at home. He shows some insight into his behaviors at counseling. He has difficulty regulating and managing emotions "in the moment." [Child] has difficulty with impulse control and acts out verbally and physically.

Dkt. #4, pp.1058-1059. The ALJ afforded this opinion "little weight as it is not supported by the totality of the education and objective treatment evidence." Dkt. #4, p.302. More specifically, the ALJ noted that the opinion was not consistent with the findings of the child's teachers[4] and the state agency psychologist. Dkt. #4, p.302.

---

[2] The domain of interacting and relating with others assesses the child's ability to initiate and sustain emotional connection with others; develop and use language; cooperate with others; comply with rules; respond to criticism; and respect and take care of possessions of others. 20 C.F.R. § 416.926a(i).

[3] The domain of caring for self assesses the child's ability to respond to changes in emotions and the daily demands of the child's environment to help the child and cooperate with others in taking care of personal needs, health and safety. 20 C.F.R. § 416.926a(k). This domain is characterized by a sense of independence and competence. *Id.*

[4] Educational providers are also considered other sources. SSR 06-03P, 2006 WL 2329939, at *2. "Although teachers are not medical sources, given their close interaction with students on a regular basis, teachers are considered valuable sources of evidence for assessing the severity of a child's impairment and it's effect on the child's ability to function." *Shawnta A. o/b/o J.A. v. Comm'r of Soc. Sec.*, 6:20-CV-6500, 2021 WL 4225651, at *6 (W.D.N.Y. Sept. 16, 2021), citing SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).

As the ALJ noted, multiple teacher questionnaires in the record fail to indicate deficits that would rise to the level of a marked limitation in any domain, including the domains of interacting and relating with others and caring for self. For example, the child's classroom teacher in 2013 reported no problems in any domain and commented that the child was "helpful around the classroom" and usually "gets along with his peers" (Dkt. #4, p.168); his classroom teacher in 2016 did not find his academic performance or any of his classroom behaviors problematic and observed only two problematic symptoms occurring often, *to wit*, is easily distracted by extraneous stimuli and is physically cruel to people (Dkt. #4, pp.188-189); his classroom teacher in 2018 noted no more than an obvious[5] problem in any domain; and his classroom teacher in 2019[6] indicated that the child had no more than an obvious problem acquiring and using information; no more than a slight problem attending and completing tasks; no more than a slight problem interacting and relating with others; no problems moving about and manipulating objects; and no more than an obvious problem caring for himself and others. Dkt. #4, pp.764-770. Obvious problems in a domain do not equate to a marked or extreme limitation as required to warrant a finding of disability. *Elizabeth R.*, 2023 WL 2325885, at *4. Moreover, an IEP prepared for the child at the end of the 2018-2019 school year indicates that the child "demonstrates

---

[5] The options on the Teacher Questionnaire provided by SSA are: (1) no problem; (2) a slight problem; (3) an obvious problem; (4) a serious problem; and (5) a very serious problem.

[6] Although not specifically addressed by the ALJ, on January 21, 2019, plaintiff's primary care provider, Gregg Shutts, PA-C, completed a medical statement indicating no more than moderate limitations in all domains even though the child was off medications, resulting in an increase in defiant behavior and educational discord with teachers. Dkt. #4, p.985. By definition, a "marked" limitation means a limitation that is "more than moderate." 20 C.F.R. § 416.926a(e)(2)(i).

positive classroom behaviors most days" (Dkt. #4, p.1023); "gets along well with peers and adults" (Dkt. #4, p.1024); "often takes on a leadership role and does his best to maintain composure when challenged by other students that he may not be getting along with (Dkt. #4, p.1024); "no longer requires a Behavioral Intervention Plan" and "is able to be successful in a well-managed, structured setting. Dkt. #4, p.1025.

In his decision, the ALJ remarked that LMSW Malachowski "noted difficulty thinking and concentrating with marked level difficulties." Dkt. #4, p.300. While it is true that the child's therapist did not identify the domains of acquiring and using information or attending and completing tasks as domains with which the child experienced marked limitations, the ALJ nonetheless addressed the impact of the symptoms identified by LMSW Malachowski on the child's ability to function in these domains. Dkt. #4, pp.300-301. The ALJ also remarked that LMSW Malachowski "noted marked limitations in [moving or health and physical well-being] due to the child's difficulty in regulating his emotions due to impulse control behaviors. Dkt. #4, p.301. Although LMSW Malachowski did not link these symptoms to a marked limitation in the domain of health and physical well being, the ALJ addressed the impact of such symptoms across that domain as well. Dkt. #4, p.301. Contrary to plaintiff's argument, it was not a mischaracterization of LMSW Malachowski's opinion to address the impact of the symptoms she identified across domains. To the contrary, the ALJ's assessment of the impact of such symptoms across domains demonstrates substantial evidence for his determination that the child was not disabled.

-10-

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**September 3, 2024**

                                                 <u>s/ H. Kenneth Schroeder, Jr.</u>
                                                 **H. KENNETH SCHROEDER, JR.**
                                                 **United States Magistrate Judge**